IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOANN MCCARDLE,

        Plaintiff,

v.                                                   Civil Action No. 3:14-cv-101

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On September 3, 2014, Joann McCardle ("Plaintiff") filed this action for judicial review of an adverse decision of the Commissioner of Social Security denying her claims for supplemental security income ("SSI") under Title XVI of the Social Security Act. ECF No. 1. The Commissioner filed her answer on November 4, 2014. ECF No. 8. Plaintiff then filed her motion for summary judgement on November 19, 2014. ECF No. 11. The Commissioner filed her motion for summary judgement on December 10, 2014. ECF No. 13. The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

    1.     Plaintiff's motion for summary judgement. ECF No. 11.

    2.     The Commissioner's motion for summary judgement. ECF No. 13.

**C. Recommendation**

I recommend that:

    1.     Plaintiff's Motion for Summary Judgment be **DENIED** because substantial evidence

supports the ALJ's finding that Plaintiff's intellectual functioning does not satisfy Listing 12.05C.

2. The Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth.

## II. FACTS

### A. Procedural History

Plaintiff applied for SSI on July 5, 2011, alleging a disability beginning on June 1, 2010. R. 133. Plaintiff's claim was initially denied on October 17, 2011, and upon reconsideration on April 9, 2012. R. 72-76, 87-89. On April 26, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and, on July 23, 2013, an ALJ hearing was held before ALJ Jeffrey P. LaVicka. R. 90-92; 32-69. Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). *Id.* On July 29, 2013, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since the date Plaintiff's application was filed. R. 15-27.

### B. Medical History

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that the Plaintiff was not under a disability during the period at issue.

Plaintiff attended elementary school in Clay County, West Virginia. R. 219-20. From Kindergarten through third grade, Plaintiff received a collection of B's, C's, and one D. R. 220. In third grade, Plaintiff underwent a "Cognitive Abilities Test" ("CAT") and "Comprehensive Tests of Basic Skills" ("CTBS"). R. 219. Plaintiff's verbal CAT score placed her in the 8th percentile and nonverbal CAT score in the 10th percentile. *Id.* Plaintiff's language CTBS scores ranged from the 5th to 26th percentile. *Id.* Her other CTBS scores ranged from the 1st to 32nd percentile. *Id.*

Beginning in fifth grade, Plaintiff's grades were primarily C's. R. 220. By seventh grade, Plaintiff's grades were mostly D's and F's. *Id.* Plaintiff left school before graduating.[1]

On August 30, 2011, Plaintiff underwent a clinical interview and mental status examination with Morgan D. Morgan, M.A. R. 379-82. Mr. Morgan reported that Plaintiff applied for social security benefits "due to stomach problems, insufficient oxygen in her blood, anxiety, and occasional depression." R. 379. During the clinical interview, Plaintiff alleged that "she has often become anxious and ruminated readily over problems . . . lead[ing] to a loss of focus and occasional situational panic symptoms." R. 380. Plaintiff "reported a history of academic deficiency and . . . a neighbor often helps her to manage her affairs due to poor reading skills." *Id.* Plaintiff told Mr. Morgan that she was last employed at a restaurant in Buckhannon, West Virginia washing dishes. *Id.* Prior to that position, she worked in a nursing home. *Id.* Plaintiff alleged that she never worked as a supervisor, operated equipment, maintained records or reports, was disciplined or fired, or had poor relationships with coworkers. *Id.*

During the mental status examination, Mr. Morgan reported that Plaintiff was "cooperative and compliant" and "[t]he length and depth of her verbal responses were within normal limits. R. 381. Mr. Morgan noted that Plaintiff's "speech was both relevant and coherent, and of normal pace." *Id.* Although Plaintiff's "mood was mildly dysphoric and tense" she "did not display signs or symptoms of psychosis." *Id.* Mr. Morgan diagnosed Plaintiff with "Generalized Anxiety Disorder" and "Depressive Disorder." *Id.* Mr. Morgan also proposed that "although no intellectual

---

[1] The date Plaintiff dropped out of school is not clear. According to her testimony during the ALJ hearing, she left school in ninth grade. R. 48. However, during her interview with Morgan D. Morgan, M.A, she alleged she left school in tenth grade. R. 380. During a disability determination examination, Bennet Orvik, M.D., noted that she "quit school in 10th grade." R. 400. Furthermore, her academic records from Clay County Schools are incomplete after seventh grade and only briefly mention that she "[t]ransferred to N.Y. (?)" on October 24, 1984. R. 219.

testing was performed" Plaintiff's "statements and presentation strongly suggest a Borderline Intellectual Functioning range of intelligence . . . ." *Id.* Mr. Morgan found Plaintiff's concentration, persistence, and pace to be "mildly deficient" and her memory to be "within normal limits." *Id.* Mr. Morgan finally concluded that Plaintiff "would be able to appropriately manage her own finances." *Id.*

On September 13, 2011, Joseph A. Shaver, Ph.D., completed a "Psychiatric Review Technique" form. R. 384-97. Dr. Shaver made a "provisional" diagnosis of borderline intellectual functioning. R. 385. Dr. Shaver also found that Plaintiff suffered from depressive and anxiety disorder, however, the impairments did not "satisfy the diagnostic criteria . . . ." R. 387-89. Dr. Shaver noted that Plaintiff's functional limitations only mildly limited her activities of daily living, social functioning, and concentration, persistence, or pace. R. 394. Dr. Shaver ultimately concluded that Plaintiff "possesses the mental capacity to engage in gainful work-like activity on a sustained basis." R. 396.

On September 13, 2011, Plaintiff underwent a disability determination examination by Bennett Orvik, M.D. R 399-403. Dr. Orvik found that Plaintiff's "main problem appears to be her significant learning disability for which of course there is not treatment." R. 403. In addition to her alleged back pain, Dr. Orvik concluded that "[h]er learning disability would likely make [a] sedentary job very difficult for her." R. 403.

On March 21, 2012, G. David Allen, Ph.D., completed a "Psychiatric Review Technique" form. R. 505-18. Like Dr. Shaver, Dr. Allen suffered from borderline intellectual functioning. R. 506. Also like Dr. Shaver, Dr. Allen found that Plaintiff suffered from depressive and anxiety disorder, however, her impairments did not "satisfy the diagnostic criteria . . . ." R. 508-10. Dr. Allen

4

found Plaintiff was only mildly limited in maintaining social functioning and maintaining concentration, persistence, or pace. R. 515. Dr. Allen found Plaintiff's statements to be "generally credible" and a "[d]irect clinical observation of functional domains suggest limitation in mild range." R. 517.

On July 19, 2013, Rod McCullough, M.A., "completed a Diagnostic Interview with [Plaintiff] and administered the WAIS-IV and WRAT-4" intelligence tests. R. 581. After testing, Mr. McCullough concluded that Plaintiff "lacks good insight and has poor understanding of her medical conditions." R. 584. Mr. McCullough believes "that for all intents and purposes [Plaintiff] is functionally illiterate when it comes to the understanding of written material." *Id.*[2] Based on Plaintiff's WRAT-4 scores, Mr. McCullough concluded Plaintiff "is only able to understand sentences that are comprised of third grade reading level words." R. 585. Based on his review of Plaintiff's academic record, he suggests that "it appears that such deficits were present during her academic years." *Id.* In conclusion Mr. McCullough found that Plaintiff:

> [M]eets list 12.05 C. Results of the intellectual testing indicates a valid VCI and FSIQ of 63 and 65 respectively. The conversion of these standard scores into stanine scores shows a significant correlation with her verbal abilities as measured by the CAT during her academic years. Thus, I believe her deficits in verbal intellect were present well before the age of 22.
>
> . . .
>
> [I]n regard to 12.05 C, there is clear evidence of marked functional impairment in ADLs, specifically her ability to function within the community without assistance as evidenced by her need to have others help her manage her affairs. Thus it is quite likely that the deficits that require her to seek assistance within the community would also spill over into a work related environment.

---

[2] In his letter to Plaintiff's counsel, Mr. McCullough explains that "[r]eading at a quick pace (an 'appropriate rate') without comprehending what is being read is not fluent reading. Additionally, reading super slowly and understanding everything being read ('adequate comprehension') likewise is not fluent reading. The balance between the two–reading rate and comprehension–is important to fluency." R. 584.

5

*Id.*

**C. Testimonial Evidence**

Testimony was taken at the ALJ hearing held on July 23, 2013. R. 32-69. The following portions of the testimony are relevant to the disposition of this case.

During the hearing, Plaintiff testified that she is married and has seven children. R. 38. Three of her children still live at home with Plaintiff and her husband. R. 42. Plaintiff testified that she can drive, but her husband "does most of the driving." R. 43. She testified that it took just over an hour to drive to the hearing. R. 47. Plaintiff testified her friend drove her the entire distance without stopping. *Id.* Plaintiff is on oxygen treatment. *Id.* Plaintiff testified that she smokes, but is "down to four cigarettes a day." *Id.*

Plaintiff testified that, at sixteen, she left school to care for her grandparents. R. 48. Plaintiff testified that, after six attempts, she received her driver's license at age twenty-two. *Id.* Plaintiff testified that she had the written portion of her driver's test read to her. *Id.* Plaintiff testified that, at one time, she held a certified nursing assistant position. R. 49. At this position, her responsibilities included helping patients move, dressing patients, changing beds, and providing water. *Id.* Plaintiff testified that she also took blood pressure, but she "wasn't doing it right. So they . . . yell[ed] at me so I quite [sic] that." *Id.* Plaintiff testified that she received no training for that position. *Id.* When Plaintiff's husband was working, Plaintiff testified that she was the primary care giver for her children. R. 50.

Plaintiff testified that her difficulty concentrating, breathing, sitting, and standing interfere with her ability to work. R. 54. Plaintiff testified that she is able to dress, shower, and clean herself. R. 56. Plaintiff testified that she had recently swam two times prior to this hearing. R. 57. Plaintiff

testified that she cooks twice a week, shops once a month, cleans dishes once a week, washes clothes once a week, and sweeps once a week. R. 57-58.

During questioning by Plaintiff's counsel, she testified that, when not on oxygen, it is very difficult for her to breath. R. 59. Plaintiff alleged that walking the front steps of her home four or five time times a day exhausted her. R. 60. Plaintiff testified that her husband helps her handle paperwork because she "can't hardly understand [or] read some big words." R. 61.

A VE also testified at the hearing. R. 62. The VE explained that Plaintiff's previous work as a nursing aide is classified as high semi-skilled work at a medium exertional level. R. 64. Next, the ALJ posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the same age, education, and work experience as the claimant who retains the capacity to perform sedentary work, with a sit stand option. With allowance to alternate sitting or standing positions for up to two minutes, at 30 minute intervals without going off task. Is limited to occasional posturals, except no climbing or ladders, ropes or scaffolds. Must avoid concentrated exposure to extreme cold and heat. Must avoid concentrated exposure to wetness and humidity, concentrated exposure to excessive vibration, all exposure to irritants, all exposure to unprotected heights, hazardous machinery, and commercial driving. Whose work is limited to simple, routine, and repetitive tasks, requiring only simple decisions with no fast paced production requirement and few workplace changes. Have only occasional interaction with the public, co-workers, and supervisors. It's my understanding that such an individual would be incapable of performing the claimant's past work, is that correct?

R. 64-65. The VE agreed with the ALJ that the hypothetical individual would be incapable of performing Plaintiff's past work. *Id.* However, the VE testified that there were other jobs in the regional or national economy that Plaintiff could perform. *Id.* The VE listed three positions that matched the limitations proposed in the ALJ's hypothetical: (1) mail sorter (sedentary exertional level and unskilled work); (2) cutter and paster (sedentary exertional level); and (3) document preparer (sedentary exertional level). R. 65-66. The VE testified that up to three days of absences

would be tolerated by an employer. R. 66. The VE also explained that a typical employer receives three breaks during a workday totaling one hour. *Id.* The VE also testified that an employer would tolerate an employee being off task "ten percent of the time." R. 67.

The VE was also examined by Plaintiff's counsel. R. 67. During examination, the VE testified that an individual would not be able to perform the mail sorter position "if they were unable to read or interpret . . . 95 words per minute." R. 68. The VE also testified that is an individual needed constant supervision performing their job, that would eliminate all of the jobs proposed by the VE. *Id.*

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a)(4) (2014). At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since June 30, 2011, the alleged onset date of Plaintiff's disability. R. 17.

At step two, the ALJ found that Plaintiff "has the following severe impairments: lumbosacral spine strain; chronic obstructive pulmonary disease; generalized anxiety disorder; depressive disorder, not otherwise specified; and borderline intellectual functioning . . . ." *Id.*

At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1." *Id*. In reaching this determination, the ALJ found that "the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings . . . ." R. 18. In regard to listing 12.05, which concerns intellectual disability, the ALJ noted that Plaintiff has not "evidenced significantly subaverage

general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . as is required" by listing 12.05. R. 19. In the ALJ's decision, he discusses the medical opinion of Rodney McCullough, M.A. who "opined that the claimant's mental impairments meet listing 12.05C." *Id.* However, the ALJ found "Mr. McCullough's opinion unreasoned and premised on his predetermined outcome." R. 21.

Next, before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[3] except the work must:

> provide a sit/stand option, allowing the person to change between sitting and standing for one to two minutes at 30 minutes intervals without breaking task; entail no climbing of ladders, rops, or scaffolds and only occasional other postural movements (i.e. climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling); entail no concentrated exposure to extreme hot and cold temperatures, wetness or humidity, and vibration; entail no exposure to respiratory irritants (such as fumes, odors, dusts, gasses, and poor ventilation) or hazards (i.e. unprotected heights, dangerous machinery, or commercial driving); be limited to simple, routine, and repetitive tasks, requiring only simple decisions, no fast-paced production requirements, and few work place changes; and entail no more than occasional interaction with the public and co-workers.

R. 22. At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." R. 26.

At the final step, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. *Id.*

## IV. MOTIONS FOR SUMMARY JUDGEMENT

---

[3] Defined by the ALJ as "lifting up to ten pounds occasionally, standing/walking for about two hours per day, and sitting for up to six hours per day with normal breaks . . . ." R. 22.

## A. Contentions of the Parties

Plaintiff contends that the ALJ's unfavorable decision is based on legal error and not supported by substantial evidence. In her brief in support of her motion for summary judgement, Plaintiff cites that her claim "rests on the finding of whether or not she is mentally impaired, and, thus, eligible for disability under Listing 12.05C." ECF No. 12 at 5. Plaintiff argues that the medical records "show that she is mentally impaired and the only way the ALJ could prove otherwise was to either rely on a psychologist's examination that did not include intelligence testing and to make up his own reasons for why [Plaintiff] was not mentally impaired." *Id.*

The Commissioner argues that Plaintiff does not the meet Listing 12.05C. Further, the Commissioner contends that Plaintiff's argument "asks this Court to reweigh the evidence of record and decide the outcome of this case differently." ECF No. 14 at 15. Further, the Commissioner states that this "request is impermissible under the substantial evidence standard of review." *Id.*

## B. The Standards

1. Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

As stated previously, an ALJ follows a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. "At the third step, [an ALJ] considers the medical severity of [a claimant's] impairment." § 416.920(A)(4)(iii). If a claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, [an ALJ] will find that [a claimant is] disabled." *Id.* In Appendix 1, the 12.00 series of listings concern mental disorders and "are arranged in nine

11

diagnostic categories . . . . 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). In this case, the only listing in contention is Listing 12.05C.[4] To satisfy Listing 12.05C, a claimant must show: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22;" (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70;" and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. at § 12.05.

To satisfy 12.05C, a Plaintiff "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* In this case, the undersigned must consider whether substantial evidence supports the ALJ's finding that Plaintiff failed to show a listing under 12.05C. The undersigned will address each prong in turn, beginning with Prong 2.

1. Listing 12.05C - Prong 2

Under Prong 2 of Listing 12.05C, Plaintiff must show "[a] valid verbal, performance, or full scale IQ of 60 through 70 . . . ." § 12.05C. Concerning this prong, the ALJ "accorded significant weight to the consultative examination findings of Morgan Morgan, M.A., and to the psychiatric review techniques prepared by the State agency consultants." R. 18. Following an examination, Mr. Morgan reported that Plaintiff's "statements and presentation strongly suggest a Borderline Intellectual Functioning range of intelligence, although no intellectual testing was performed" during his examination. R. 381. In their respective psychiatric review techniques, Drs. Shaver and Allen

---

[4] As Plaintiff concedes, her "case rests on the finding of whether or no she is mentally impaired, and, thus, eligible for disability under Listing 12.05C." ECF No. 12 at 5.

also found that Plaintiff experienced Borderline Intellectual Functioning. R. 385, 506.

During Mr. McCullough's July 19, 2013, examination of Plaintiff, Plaintiff underwent the WAIS-IV intelligence test. R. 581. Based on this test, Mr. McCullough determined that Plaintiff currently has an IQ of 65. R. 583. Other than the intelligence testing performed by Mr. McCullough, it does not appear in the record that Plaintiff has undergone any other intellectual testing. Although Mr. McCullough's IQ finding would, on its face, satisfy Prong 2, in the Fourth Circuit, "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470 (4th Cir. 2012). However, in this case, it appears to the undersigned that the ALJ does not contest Mr. McCullough's current IQ finding, but, rather, Mr. McCullough's attempt to correlate current IQ results with 3rd Grade standardized tests that were not intended as "a measure of intellectual ability," as discussed below. R. 20. Therefore, even if Prong 2 is satisfied, Plaintiff "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530 (emphasis added). Thus, in addition to Prong 2, Plaintiff must also satisfy Prongs 1 and 3 of Listing 12.05C.

2. Listing 12.05C - Prongs 1 and 3.

Prong 1 requires a showing of "deficits in adaptive functioning." § 12.05C. Prong 3 requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function." § 12.05C. Relevant to both prongs, the ALJ found that "there is no support for the assessment that the claimant is unable to function within the community without assistance." R. 21. Further, the ALJ noted that "claimant's activities of daily living are quite extensive . . . ." *Id.* In the ALJ's decision, he explained:

> At the hearing, the claimant attempted to portray her activities of daily living as quite limited. Yet, she admitted that she tends to her own personal needs, sweeps the

13

> floors, uses the internet, and occasionally swims. She indicated that she cooks twice per week, shops once a month, does dishes weekly, does laundry weekly, and makes her own bed. These activities are consistent with the ability to perform at least sedentary work activities.

R. 24. In addition to these "significant daily activities" the ALJ also noted that Plaintiff has cared for a young child. *Id.* According to Plaintiff's testimony, three of Plaintiff's seven children live at home and two of her children are minors. R. 41-42.

"The key term in the introductory paragraph of section 12.05 of the regulation, so far as bears on this case, is 'deficits in adaptive functioning.' The term denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV–TR) 42 (4th ed.2000)). Relevant to Prongs 1 and 3, the Second Circuit has held "that if one is able to satisfactorily navigate activities such as 'liv[ing] on [one's] own,' 'tak[ing] care of . . . children . . . without help . . . sufficiently well that they have not been adjudged neglected,' 'pay[ing] bills,' and 'avoid [ing] eviction,' one does not suffer from deficits in adaptive functioning." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy*, 497 F.3d at 710.).

Based on the record and Plaintiff's testimony, substantial evidence supports the ALJ's finding that the evidence is inconsistent with a finding that Plaintiff had the required deficits in adaptive functioning or a "mental impairment imposing an additional and significant work-related limitation of function." § 12.05C.

Plaintiff argues that she, in fact, displays deficits in adaptive functioning because she has had at least one child taken away from her, and has in the past offered another child for adoption. ECF No. 15 at. 10. Additionally, Plaintiff stated that she has received help from her parents to care for her other children. *Id.*. Nevertheless, three of Plaintiff's children still live at home, and she

testified that she still undertakes significant chores around the house. R. 40-58.

Additionally, not only does Prong 1 require a showing of "deficits in adaptive functioning," it also requires a showing that the adaptive functioning was "manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." § 12.05. As to this portion of Prong 1, the ALJ found that Plaintiff did not "evidence[] 'significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period' (i.e., prior to the age of 22) as is required by the threshold language of that listing in order to implicate any further evaluation under its provisions." R. 19. In consideration of this prong, the ALJ cites Mr. McCullough's psychological report of Plaintiff. R. 581-84. In his report, Mr. McCullough concludes that Plaintiff has "a valid VCI and FSIQ of 63 and 65 respectively . . . [and] [t]he conversion of these standard scores into stanine scores shows a significant correlation with her verbal intellect were present well before the age of 22." R. 584. The ALJ, however, discredits Mr. McCullough's report, in part, because the ALJ found that Mr. McCullough's report "speculates as to the claimant's level of functioning prior to age 22 . . . ." R. 19. The ALJ continues, explaining that:

> The record contains sparse education records from Clay County Schools. The claimant appeared to perform much better in grades K through 4 than she did in grades 5 through 7; however, it is also noted that the claimant's worsening grades corresponded with a spike in the amount of absences. These records reflect somewhat poor academic achievement, but they do not support the presence of listing level mental retardation at that time.

R. 19 (internal citations omitted).

Plaintiff argues that, based on Mr. McCullough's report and her poor academic records, she has shown deficits in adaptive functioning prior to age 22. Plaintiff further contends that "[t]here is nothing in the record to support that ALJ's" conclusion that Plaintiff's decline in grades correlated

with her increased absences. ECF No. 12 at 9.

In *Hancock v. Astrue*, 667 F.3d 470, an ALJ concluded that a claimant had not satisfied Listing 12.05C. *Id.* at 473. The Fourth Circuit analyzed Prongs 1 and 2 of Listing 12.05C to determine whether substantial evidence supported the ALJ's finding.[5] *Id.* Concerning Prong 1, the Fourth Circuit found that:

> Although the evidence showed that [plaintiff's] grades declined from the fifth to the eighth grades, the ALJ attributed this decline to the fact that [plaintiff] was absent from school for approximately half of that time. Additionally, although [plaintiff] provided evidence of low IQ scores, the ALJ found that the scores were higher than could be expected from someone with mental retardation. [Plaintiff] had the burden of proving a deficiency during her developmental years, and she failed to do so. Accordingly, we hold that the ALJ's finding as to this component of Prong 1 of Listing 12.05C rested on substantial evidence.

*Hancock*, 667 F.3d at 476 (internal citations omitted).

Similarly to *Hancock*, the ALJ in this case found that Plaintiff's "worsening grades corresponded with a spike in the amount of absences." R. 19. From Kindergarten to 4th Grade, Plaintiff received mostly B's and C's, and missed no more than ten school days in an academic year. R. 220. From 5th Grade to 7th Grade, Plaintiff's grades decreased, receiving mostly C's and some D's. *Id.* However, her absenteeism grew during this time, ranging from fifteen to twenty-five missed school days per year. *Id.* By 8th Grade, Plaintiff received several failing grades and missed school twenty-nine out of the possible sixty-one school days before allegedly transferring on October 24, 1984. R. 219-20. Based on this evidence, the ALJ concluded that although Plaintiff's grades "reflect poor academic achievement . . . they do not support the presence of listing level mental retardation

---

[5] The Fourth Circuit did not analyze Prong 3 because "the Commissioner d[id] not contest [plaintiff's] ability to establish Prong 3." *Id.*

at that time." R. 19.[6]

Additionally, the ALJ criticized Mr. McCullough's report as an "attempt[] to extrapolate the claimant's level of functioning as a child by comparing the results from standardized academic testing" completed in 3rd Grade. R. 19. The ALJ found that the standardized tests taken by Plaintiff are "not a measure of intellectual ability." R. 20. Furthermore, the ALJ noted that Mr. McCullough reported that "claimant's full scale IQ score of 63 converts to a stanine score of one . . . [however] claimant scored a two on this early academic testing, and thus, even by his own logic, the claimant's IQ score would have been higher at the time." *Id.* Thus, based on the Fourth Circuit's rationale in *Hancock*, the ALJ's conclusion as to Prong 1 is based on substantial evidence.

## V. RECOMMENDATION

For the reasons appearing above, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Plaintiff's Motion for Summary Judgment be **DENIED**. ECF No. 11.

2. The Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth. ECF No. 13.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of

---

[6] Like *Hancock*, in a 2011 report and recommendation, U.S. Magistrate Judge John S. Kaul found that a plaintiff failed to show, "deficits in adaptive functioning initially manifested during the developmental period" when plaintiff began receiving C's and D's by 6th Grade "but was also absent a great deal of the time . . . [and] [o]n standardized tests . . . [h]e performed better than 5-11% of the students in his grade in his school or school district." *Cogar v. Astrue*, No. 1:11CV76, 2011 WL 7154369, at *12 (N.D.W. Va. Dec. 6, 2011) *report and recommendation adopted sub nom. Cogar v. Comm'r of Soc. Sec.*, No. 1:11CV76, 2012 WL 380358 (N.D.W. Va. Feb. 6, 2012).

the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: March 24, 2015              /s/ *James E. Seibert*
                                   JAMES E. SEIBERT
                                   UNITED STATES MAGISTRATE JUDGE